ABELE, J.
{¶ 1} This is an appeal from a Washington County Common Pleas Court judgment of conviction and sentence. The trial court found Nathan Simmons, defendant below and appellant herein, guilty of five fifth-degree felony drug-possession offenses. Appellant assigns the following errors for review:
FIRST ASSIGNMENT OF ERROR:
"THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION FOR FINDING OF IMMUNITY FROM PROSECUTION."
SECOND ASSIGNMENT OF ERROR:
"APPELLANT'S SENTENCE WAS CONTRARY TO LAW."
{¶ 2} On July 29, 2016, a Washington County grand jury returned an indictment that charged appellant with five drug-possession offenses, each a fifth-degree felony. In September 2016, the General Assembly amended the drug-possession statute, R.C. 2925.11. The amendment generally grants immunity to a "qualified individual" who otherwise could be charged with a misdemeanor- or fifth-degree felony drug-possession offense. For immunity to attach, the individual must satisfy the statutory requirements.
{¶ 3} Appellant filed a motion to request the court to find him immune from prosecution under the amended statute. Appellant argued that he is a "qualified individual" under the statute and that he meets all of the requirements outlined in the statute. Appellant asserted that on July 5, 2015, he *329 was found unresponsive due to a suspected heroin overdose and emergency medical personnel revived him with Narcan. Appellant further claimed that he returned to his drug treatment program less than three weeks later, and remained in treatment until September 19, 2016. Appellant thus contended that he is a "qualified individual" and is therefore immune from prosecution under the amended statute.
{¶ 4} In support of his motion, appellant attached a letter from his drug-treatment counselor that stated: "[Appellant] entered treatment in 2004 [sic] and had left treatment for 30 days in June 2015 due to non-compliance and then returned for treatment on July 23, 2015. He was then discharged from treatment on September 19, 2016."
{¶ 5} Appellant thus alleged that the evidence shows that: (1) he was charged after a drug overdose and was treated by emergency medical personnel; (2) he "returned to counseling for his addiction within thirty (30) days of his overdose"; and (3) he remained in treatment until September 19, 2016. Appellant further asserted that he "is ready, willing and able to provide the prosecuting attorney any necessary documentation required under the statute."
{¶ 6} The state, however, opposed appellant's motion for immunity under R.C. 2925.11(B)(2)(b). The state first asserted that appellant is not a "qualified individual" under 2925.11(B)(2)(b)(ii). That provision specifies that to be entitled to immunity, the "qualified individual" must seek or obtain a screening and receive a referral for treatment within thirty days of obtaining medical treatment. The state argued that appellant did not present evidence that he sought a screening and received a referral for treatment within thirty days of his overdose, but instead, he showed only that he returned to his previous counseling.
{¶ 7} The state also claimed that even if appellant is a "qualified individual," the amended statute does not apply to individuals, like appellant, who committed a drug possession offense before the amendment's effective date. The state asserted that the General Assembly did not explicitly indicate that the statute applies retroactively, and thus, the statute applies prospectively only.
{¶ 8} The state also asserted that R.C. 1.58(B) does not apply. The state noted that R.C. 1.58(B) provides that if a statutory amendment reduces the penalty, forfeiture, or punishment for any offense, then "the penalty, forfeiture, or punishment, if not already imposed, shall be imposed according to the statute as amended." The state claimed, however, that R.C. 2929.11(B)(2)(b) did not reduce the penalty or punishment for a drug possession offense. The state maintained that R.C. 2929.11(B)(2)(b) immunity is not the same as a reduction in penalty or punishment.
{¶ 9} In response, appellant asserted that he had received a screening and a referral for treatment within thirty days of his overdose. Appellant included a second letter from his drug-treatment provider. This letter stated that when appellant "entered treatment [on] July 27, 2015[,] he had to provide a drug screen analysis along with having a bio-psychosocial assessment. After assessment, patient met criteria to be referred into treatment. Patient stated he needed to be in treatment due to an overdose. [Appellant] continued to be compliant in treatment until 9/9/2016."
{¶ 10} Appellant further disputed the state's assertion that R.C. 1.58(B) is inapplicable to R.C. 2929.11(B)(2)(b). Appellant argued that immunity, by definition, prevents a person from being prosecuted or *330 penalized, and as such, immunity constitutes a reduction in penalty.
{¶ 11} On March 9, 2017, the trial court overruled appellant's motion. The court determined that the amendment is more in the nature of a repeal of criminal conduct, rather than a reduction in penalty. The court found that under R.C. 1.58(A), "if a criminal statute is repealed and no longer defines a crime, a person can be prosecuted and convicted of the violation of the former statute. However, under R.C. 1.58(B), if the penalty is reduced under the amendment, then the reduced penalty shall be imposed if the penalty has not yet been imposed." The court reasoned: "If immunity were to apply to the Defendant, then the Court would not have the ability to follow R.C. 1.58(B) and impose a reduced penalty upon the Defendant since the Defendant would not be subject to criminal prosecution at all. Therefore, the Court finds that immunity is more in the nature of a repeal of criminal conduct and that R.C. 1.58(A) applies. The General Assembly did not explicitly state that the amendment to R.C. 2925.11(B) is to be applied retroactively."
{¶ 12} Appellant subsequently entered no contest pleas to the five counts of the indictment. The court found appellant guilty and sentenced him in accordance with the parties' agreement. This appeal followed
I
{¶ 13} In his first assignment of error, appellant asserts that the trial court abused its discretion by overruling his motion for immunity under R.C. 2925.11(B)(2)(b). He contends that the trial court incorrectly determined that the amendment is more in the nature of a repeal of criminal conduct subject to R.C. 1.58(A), rather than a reduction in penalty subject to R.C. 1.58(B). Appellant argues that the amendment does not repeal the offense of drug possession, but instead, the amendment reduces the penalty for qualified individuals.
{¶ 14} The state argues that R.C. 2925.11(B)(2)(b) does not apply to appellant. The state points out that appellant's offenses occurred before the effective date of R.C. 2925.11(B)(2)(b) and that the statute does not contain any indication that it applies retroactively. The state further asserts that even if the statute did apply retroactively, appellant failed to satisfy all of the requirements specified in the statute.
A
{¶ 15} We initially note that both parties advocate that we apply an abuse-of-discretion standard to the trial court's decision regarding the statute's applicability to appellant's situation. The state cites two cases to support its assertion that an abuse-of-discretion applies: Urbana ex rel. Newlin v. Downing , 43 Ohio St.3d 109, 113, 539 N.E.2d 140 (1989), and State v. Brumback , 109 Ohio App.3d 65, 77, 671 N.E.2d 1064 (9th Dist. 1996). Both cases indicate that appellate courts review trial court decisions regarding evidence-admissibility for an abuse of discretion. Neither case, however, addresses the standard of review that applies when reviewing a trial court's decision concerning the applicability of a statute. Appellant simply asserts that appellate courts "review[ ] the denial of a motion for an abuse of discretion." We do not believe that the abuse-of-discretion standard applies in the case sub judice.
{¶ 16} "When a court's judgment is based on an erroneous interpretation of the law, an abuse-of-discretion standard is not appropriate." Med. Mut. of Ohio v. Schlotterer, 122 Ohio St.3d 181, 2009-Ohio-2496, 909 N.E.2d 1237, ¶ 13 ; accord *331 State v. Morris, 132 Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528, ¶ 16. Instead, when the "trial court decision being challenged d[oes] not involve the exercise of discretion, but [i]s based on a question of law, no deference is afforded." Wagner v. Roche Laboratories, 85 Ohio St.3d 457, 460, 709 N.E.2d 162 (1999) ; accord Wray v. Wessell , 4th Dist. Scioto No. 15CA3724, 2016-Ohio-8584, 2016 WL 7912885, ¶ 13.
{¶ 17} In the case at bar, appellant challenges the trial court's decision to overrule his motion that requested R.C. 2925.11(B)(2)(b) immunity. The trial court examined R.C. 1.58 and determined that R.C. 2925.11(B)(2)(b) operated as a repeal of an existing statute, rather than a reduction in penalty. The court thus concluded that under R.C. 1.58(A), the recently-amended 2925.11(B)(2)(b) did not apply to an individual who, like appellant, committed the offense and was arrested or charged before the statute's effective date. Appellant's first assignment of error thus, in essence, questions whether the trial court correctly interpreted R.C. 1.58 and R.C. 2925.11(B)(2)(b).
{¶ 18} The abuse-of-discretion standard does not apply to a trial court's interpretation of a statute. Rather, the correct interpretation of a statute is a question of law subject to de-novo review. State v. Pountney , 152 Ohio St.3d 474, 2018-Ohio-22, 97 N.E.3d 478, ¶ 20 ; State v. Pariag , 137 Ohio St.3d 81, 2013-Ohio-4010, 998 N.E.2d 401, ¶ 9. We therefore independently review a trial court's interpretation of a statute and do not defer to its interpretation. E.g., Gyugo v. Franklin Cty. Bd. Of Dev. Disabilities , 151 Ohio St.3d 1, 2017-Ohio-6953, 84 N.E.3d 1021, ¶ 13 ; State v. Vanzandt , 142 Ohio St.3d 223, 2015-Ohio-236, 28 N.E.3d 1267, ¶ 6 ; State v. Bundy , 2012-Ohio-3934, 974 N.E.2d 139, ¶ 46 (4th Dist.) ; see also Hudson v. Petrosurance, Inc. , 127 Ohio St.3d 54, 2010-Ohio-4505, 936 N.E.2d 481, ¶ 29, citing MCI Telecommunications Corp. v. Pub. Util. Comm. , 38 Ohio St.3d 266, 268, 527 N.E.2d 777 (1988) (stating that appellate courts have "complete and independent power of review as to all questions of law"). Consequently, we disagree with the parties that the abuse-of-discretion standard of review applies. Instead, the de-novo standard of review guides our decision.
B
{¶ 19} In the case at bar, appellee charged appellant with five, fifth-degree felony drug-possession offenses. After appellant's indictment but before his conviction, the General Assembly amended R.C. 2925.11. The amendment added R.C. 2925.11(B)(2)(b), which grants immunity to "a qualified individual." See R.C. 2925.11(B)(2)(f) (describing R.C. 2925.11(B)(2)(b) as granting immunity). More specifically, the statute provides:
[A] qualified individual shall not be arrested, charged, prosecuted, convicted, or penalized pursuant to this chapter for a minor drug possession offense if all of the following apply:
(I) The evidence of the obtaining, possession, or use of the controlled substance or controlled substance analog that would be the basis of the offense was obtained as a result of the qualified individual seeking the medical assistance or experiencing an overdose and needing medical assistance.
(ii) Subject to division (B)(2)(g) of this section, within thirty days after seeking or obtaining the medical assistance, the qualified individual seeks and obtains a screening and receives a referral for treatment from a community addiction services provider or a properly credentialed addiction treatment professional.
*332 (iii) Subject to division (B)(2)(g) of this section, the qualified individual who obtains a screening and receives a referral for treatment under division (B)(2)(b)(ii) of this section, upon the request of any prosecuting attorney, submits documentation to the prosecuting attorney that verifies that the qualified individual satisfied the requirements of that division. The documentation shall be limited to the date and time of the screening obtained and referral received.
{¶ 20} A " '[q]ualified individual' means a person who is not on community control or post-release control and is * * * a person who experiences a drug overdose and who seeks medical assistance for that overdose." R.C. 2925.11(B)(2)(a)(viii). A "[m]inor drug possession offense' means a violation of this section that is a misdemeanor or a felony of the fifth degree." R.C. 2925.11(B)(2)(a)(iv).
{¶ 21} In the case sub judice, the parties dispute whether R.C. 2925.11(B)(2)(b) applies to an individual, like appellant, who committed the alleged drug-possession offense prior to the effective date of the amendment, but who had not yet been convicted or penalized. The state asserts that the amendment is prospective only and cannot apply to an individual who committed the drug-possession offense before the effective date of the amendment. Appellant argues that both the language of the statute and R.C. 1.58(B) show that the amendment applies to his situation.
C
{¶ 22} The Ohio Constitution prohibits the General Assembly from passing retroactive laws. Ohio Constitution, Section 28, Article II; State v. Williams , 129 Ohio St.3d 344, 2011-Ohio-3374, 952 N.E.2d 1108, ¶ 8. Moreover, the general rule is that "[a] statute is presumed to be prospective in its operation unless expressly made retrospective." R.C. 1.48 ; accord State v. Roberts , 134 Ohio St.3d 459, 2012-Ohio-5684, 983 N.E.2d 334, ¶ 27.
{¶ 23} Additionally, R.C. 1.58 sets forth specific rules that apply when the General Assembly reenacts, amends, or repeals statutes. Generally, "the substantive provisions of the former law apply to all pending prosecutions, but the defendants receive the benefit of a reduced 'penalty, forfeiture, or punishment' in the statute as amended, unless the General Assembly expresses another intent." State v. Solomon , 2012-Ohio-5755, 983 N.E.2d 872, ¶ 16 (1st Dist.), citing R.C. 1.58, and State v. Rush, 83 Ohio St.3d 53, 697 N.E.2d 634 (1998) (noting and giving effect to the General Assembly's stated intent that the amended sentencing provisions of Am.Sub.S.B. No. 2 apply only to crimes committed on or after July 1, 1996).
{¶ 24} R.C. 1.58(A) states:
The reenactment, amendment, or repeal of a statute does not, except as provided in division (B) of this section:
* * * *
(3) Affect any violation thereof or penalty, forfeiture, or punishment incurred *333 in respect thereto, prior to the amendment or repeal;
(4) Affect any investigation, proceeding, or remedy in respect of any such privilege, obligation, liability, penalty, forfeiture, or punishment; and the investigation, proceeding, or remedy may be instituted, continued, or enforced, and the penalty, forfeiture, or punishment imposed, as if the statute had not been repealed or amended.
{¶ 25} Accordingly, unless R.C. 1.58(B) provides otherwise, "[t]he reenactment, amendment, or repeal of" R.C. 2925.11 does not "[a]ffect any violation thereof or penalty, forfeiture, or punishment incurred in respect thereto, prior to the amendment or repeal."
{¶ 26} R.C. 1.58(B) states: "If the penalty, forfeiture, or punishment for any offense is reduced by a reenactment or amendment of a statute, the penalty, forfeiture, or punishment, if not already imposed, shall be imposed according to the statute as amended." Thus, " R.C. 1.58(B) identifies which law to apply when a statute is amended after the commission of a crime but before sentence is imposed[.]" State v. Kaplowitz , 100 Ohio St.3d 205, 2003-Ohio-5602, 797 N.E.2d 977, ¶ 8.
{¶ 27} In the case sub judice, we therefore must determine whether R.C. 2925.11(B)(2)(b) reduces "the penalty, forfeiture, or punishment" for fifth-degree felony drug-possession. This requires that we ascertain the meaning of "penalty, forfeiture, or punishment."
{¶ 28} A court that is ascertaining the meaning of a statute first must "consider the 'plain meaning of the statutory language.' " State v. D.B. , 150 Ohio St.3d 452, 2017-Ohio-6952, 82 N.E.3d 1162, ¶ 10, quoting Portage Cty. Bd. of Commrs. v. Akron, 109 Ohio St.3d 106, 2006-Ohio-954, 846 N.E.2d 478, ¶ 52. "If that language is 'unambiguous and definite,' we apply it 'in a manner consistent with the plain meaning of the statutory language.' " Id. , quoting State v. Lowe, 112 Ohio St.3d 507, 2007-Ohio-606, 861 N.E.2d 512, ¶ 9. Accordingly, a court's first step when considering the meaning of a statute "is always to determine whether the statute is 'plain and unambiguous.' " Jacobson v. Kaforey , 149 Ohio St.3d 398, 2016-Ohio-8434, 75 N.E.3d 203, quoting State v. Hurd , 89 Ohio St.3d 616, 618, 734 N.E.2d 365 (2000) ; see also State ex rel. Cordray v. Midway Motor Sales, Inc. , 122 Ohio St.3d 234, 2009-Ohio-2610, 910 N.E.2d 432, ¶ 15, quoting Slingluff v. Weaver , 66 Ohio St. 621, 64 N.E. 574 (1902), paragraph two of the syllabus (stating that if words used in statute " 'be free from ambiguity and doubt, and express plainly, clearly and distinctly, the sense of the law-making body, there is no occasion to resort to other means of interpretation' "). " 'If [the statute] is not ambiguous, then we need not interpret it; we must simply apply it.' " Wilson v. Lawrence , 150 Ohio St.3d 368, 2017-Ohio-1410, 81 N.E.3d 1242, ¶ 11, quoting State v. Hairston , 101 Ohio St.3d 308, 2004-Ohio-969, 804 N.E.2d 471, ¶ 13. When the language used in a statute " 'is plain and unambiguous, and conveys a clear and definite meaning, we must rely on what the General Assembly has said.' " Id. , quoting Jones v. Action Coupling & Equip., Inc. , 98 Ohio St.3d 330, 2003-Ohio-1099, 784 N.E.2d 1172, ¶ 12, citing Symmes Twp. Bd. of Trustees v. Smyth , 87 Ohio St.3d 549, 553, 721 N.E.2d 1057 (2000). Additionally, courts must "give effect only to the words the legislature used, making neither additions to, nor deletions from, the statutory language." Id. , citing Columbia Gas Transm. Corp. v. Levin , 117 Ohio St.3d 122, 2008-Ohio-511, 882 N.E.2d 400, ¶ 19. Furthermore, " '[t]he interpretation of statutes and administrative rules should follow the principle that neither is to be construed in any way other than as the words demand.' " State ex rel. Baroni v. Colletti , 130 Ohio St.3d 208, 2011-Ohio-5351, 957 N.E.2d 13, ¶ 18, quoting Morning View Care Ctr.-Fulton v. Ohio Dept. of Human Servs. , 148 Ohio App.3d 518, 2002-Ohio-2878, 774 N.E.2d 300, ¶ 36 (10th Dist.).
{¶ 29} Consequently, when interpreting a statute, courts first look to the text of the rule, "reading words and phrases in context and construing them according to the rules of grammar and common usage." State ex rel. Steele v. Morrissey , 103 Ohio St.3d 355, 2004-Ohio-4960, 815 N.E.2d 1107, ¶ 21. When, however, a legislative *334 "definition is available, we construe the words of the statute accordingly." State v. Gonzales , 150 Ohio St.3d 276, 2017-Ohio-777, 81 N.E.3d 419, ¶ 4, citing R.C. 1.42 ; accord Stewart v. Vivian , 151 Ohio St.3d 574, 2017-Ohio-7526, 91 N.E.3d 716, ¶ 25. "Terms that are undefined in a statute are accorded their common, everyday meaning." Stewart at ¶ 25, citing R.C. 1.42.
{¶ 30} A statute is ambiguous when the language "is 'capable of bearing more than one meaning.' " Jacobson at ¶ 8, quoting Dunbar v. State , 136 Ohio St.3d 181, 2013-Ohio-2163, 992 N.E.2d 1111, ¶ 16. A court that is reviewing a statute for ambiguity should direct its " 'attention * * * beyond single phrases, and * * * should consider, in proper context, all words used by the General Assembly in drafting [the relevant statute] with a view to its place in the overall [statutory] scheme.' " Gonzales at ¶ 5, quoting D.A.B.E., Inc. v. Toledo-Lucas Cty. Bd. of Health , 96 Ohio St.3d 250, 2002-Ohio-4172, 773 N.E.2d 536, ¶ 19. "Without 'an initial finding' of ambiguity, 'inquiry into legislative intent, legislative history, public policy, the consequences of an interpretation, or any other factors identified in R.C. 1.49 is inappropriate.' " Jacobson at ¶ 8, quoting Dunbar at ¶ 16.
{¶ 31} In the case sub judice, the General Assembly did not define the terms "penalty, forfeiture, or punishment" as used in R.C. 1.58(B). We therefore "first consider the dictionary definition[s] of the term[s]." Stewart at ¶ 26.
{¶ 32} The term "penalty" generally means "the punishment inflicted by a law for its violation. The term is most applied to a pecuniary punishment.' " In re Lange's Estate , 164 Ohio St. 500, 505, 132 N.E.2d 96 (1956). Black's Law Dictionary indicates that the word, "penalty," is "[a]n elastic term with many different shades of meaning," but it typically "involves the idea of punishment, corporeal or pecuniary, or civil or criminal, although its meaning is generally confined to pecuniary punishment." Black's Law Dictionary 1133 (6th Ed. 1990); accord State v. Solomon , 1st Dist., 2012-Ohio-5755, 983 N.E.2d 872, ¶ 38.
{¶ 33} "Forfeiture" is "[a] comprehensive term which means a divestiture of specific property without compensation," and it includes the "[l]oss of some right or property as a penalty for some illegal act." Black's at 650; accord Solomon at ¶ 39 ; State v. Whitaker , 111 Ohio App.3d 608, 615, 676 N.E.2d 1189 (6th Dist.1996), quoting Webster's Third New International Dictionary (1986) 891, (defining " '[f]orfeiture' * * * as 'the loss of property or money on account of one's breach of [a] * * * legal obligation' ").
{¶ 34} The term "punishment" means "[a]ny fine, penalty, or confinement inflicted upon a person by the authority of the law and the judgment and sentence of a court, for some crime or offense committed by him * * *." Black's at 1234; accord Solomon at ¶ 40.
{¶ 35} Inserting the plain and ordinary meaning of the above terms into R.C. 1.58(B) reveals that when a statutory reenactment or amendment reduces (1) the "punishment, corporeal or pecuniary, or civil or criminal," (2) the "divestiture of specific property without compensation," or (3) "[a]ny fine, penalty, or confinement inflicted," then "the penalty, forfeiture, or punishment, if not already imposed, shall be imposed according to the statute as amended." In the case at bar, therefore, if R.C. 2925.11(B)(2)(b) reduces any of the foregoing, the trial court must apply R.C. 1.58(B), not R.C. 1.58(A).
{¶ 36} We find the Ohio Supreme Court's decisions that address *335 R.C. 1.58(B)'s applicability to the General Assembly's overhaul of Ohio's sentencing laws instructive. In State v. Thomas , 148 Ohio St.3d 248, 2016-Ohio-5567, 70 N.E.3d 496, for example, the court determined that a defendant who committed his offenses before the effective date of statutory amendments that reduced the potential prison sentences for the offenses was "entitled to the benefit of the shorter potential sentences under the law in effect at the time of sentencing," rather than the longer sentences in effect at the time he committed the offenses.
{¶ 37} The Thomas court began its analysis by observing that if a statutory amendment reduces the punishment for an offense, the "punishment, if not already imposed, shall be imposed according to the statute as amended." Id. at ¶ 8, quoting R.C. 1.58(B). The court noted that before the trial court convicted and sentenced appellant, the General Assembly amended the felony sentencing statutes so as to reduce the length of a prison term for first-degree-felony offenders, such as Thomas. The court observed that the uncodified law indicated that the "penalty-reduction provisions apply to those offenders to whom R.C. 1.58 applies." 2011 Am.Sub.H.B. 86, Sections 3-4. The court thus determined that Thomas was entitled to be sentenced under the law in effect at the time of his sentencing, rather than the law in effect when he committed the offenses.
{¶ 38} In State v. Taylor , 138 Ohio St.3d 194, 2014-Ohio-460, 5 N.E.3d 612, the court considered "whether the defendant may benefit from the decrease in a classification and penalty of an offense enacted by the General Assembly that becomes effective after the commission of the offense but before sentencing on that offense." Id. at ¶ 1. In reaching its decision, the court rejected the state's assertion that a statutory amendment that decreases the classification of an offense does not constitute an amendment to the penalty, forfeiture, or punishment within the meaning of R.C. 1.58(B). The court explained "[t]he flaw" in the state's position "is that implicit in a decrease in the classification of an offense from a felony of the fifth degree to a misdemeanor of the first degree is a corresponding reduction in the penalty or punishment for that conduct." Taylor at ¶ 16. The court thus determined that the defendant was entitled to the reduced penalty provided in the amendment.
{¶ 39} In State v. Limoli , 140 Ohio St.3d 188, 2014-Ohio-3072, 16 N.E.3d 641, the court likewise determined that a defendant was entitled to be sentenced in accordance with the law in effect at the time of her sentencing, and not with the law in effect at the time of her offense-or at the time she entered her no-contest plea. In Limoli , the state charged the defendant with third-degree felony crack-cocaine-possession, which carried a mandatory prison term. Before the defendant's sentencing, the General Assembly amended the statute to eliminate any reference to crack-cocaine. As amended, possession of cocaine-crack or otherwise-constituted a fourth-degree felony.
{¶ 40} The state argued that R.C. 1.58(B) did not apply to the General Assembly's amendment to the cocaine-possession statute. The state claimed that the amendment did not reduce the penalty for crack cocaine, but rather, the amendment eliminated any reference to crack cocaine and thus changed the nature of offense. The supreme court disagreed. The court explained:
[U]nder the logic employed by the state, it would no longer be a crime to possess crack cocaine. We disagree. Crack cocaine is simply another form of cocaine. See R.C. 2925.01(X). To conclude otherwise would be absurd. Crack cocaine still *336 exists, and under R.C. 2925.11(C)(4) ©, it is still illegal to possess it. There is no reason to believe that the legislature intended to legalize its possession.
Id. at ¶ 11. The court therefore determined that R.C. 1.58(B) entitled the defendant to receive the reduced penalty provided in the amended statute.
{¶ 41} In the case sub judice, we agree with appellant that R.C. 2925.11(B)(2)(b) operates to reduce the penalty/punishment for a minor drug possession offense. Before the General Assembly amended R.C. 2925.11, appellant's offense was classified as a fifth-degree felony, and the trial court could have sentenced appellant to community control or prison. See R.C. 2925.11(B)(6)(a) ; 2929.13(B); 2929.14(A)(5). After the amendment, possession of the amount of heroin charged in appellant's indictment still constitutes a crime. Under the amendment, however, appellant cannot be prosecuted, convicted, or penalized at all for fifth-degree felony drug-possession, provided he meets the definition of a "qualified individual" and satisfies the statutory requirements. The amendment thus reduces the penalty/punishment for a "qualified individual" who meets the statutory requirements from a prison sentence-at worst-to no penalty/punishment whatsoever.
{¶ 42} R.C. 2925.11(B)(2)(b) thus grants immunity to a qualified individual. See R.C. 2925.11(B)(2)(f) (describing R.C. 2925.11(B)(2)(b) as granting immunity); 2016 Ohio Laws File 87 (Sub. H.B. 110) (stating that purpose of amendment is "to provide immunity from arrest, prosecution, or conviction * * * for a minor drug possession offense for a person who seeks or obtains medical assistance for self"). "Immunity" means "[f]reedom or exemption from penalty * * *." Black's at 751. Immunity, therefore, not only reduces the penalty, but it completely removes the penalty. We hence believe that the immunity contemplated in R.C. 2925.11(B)(2)(b) not only reduces, but completely eliminates, "the penalty, forfeiture, or punishment" a qualified individual would otherwise face for a minor drug possession offense. Consequently, because R.C. 2925.11(B)(2)(b) reduces by elimination "the penalty, forfeiture, or punishment" a qualified individual would otherwise face for a minor drug possession offense, R.C. 1.58(B) applies and requires the trial court to ascertain whether appellant is entitled to immunity under R.C. 2925.11(B)(2)(b).
{¶ 43} We do not agree with the trial court that the amendment is more in the nature of a repeal of a statute subject to R.C. 1.58(A)(3). R.C. 2925.11 continues to define drug-possession as a crime, and R.C. 2925.11(B)(2)(b) does not state that drug-possession no longer is a crime. Instead, the amendment defines the types of individuals not subject to arrest, prosecution, conviction, or punishment for committing a minor drug-possession offense.
{¶ 44} We observe that the Ninth and the Twelfth District Courts of Appeal also have considered whether R.C. 2925.11(B)(2)(b) applies to defendants whose offenses occurred before the effective date of the amendment, but who were not prosecuted, convicted, or sentenced until after the amendment became effective. State v. Vineyard , 2018-Ohio-705, 106 N.E.3d 780 (12th Dist.) ; State v. Sieminski , 2017-Ohio-5480, 92 N.E.3d 1252 (9th Dist.). Neither court, however, examined the import of R.C. 1.58(B).
{¶ 45} In Sieminski , the appellate court reversed the trial court's decision that dismissed the defendant's R.C. 2925.11(A) indictment. The court did not consider R.C. 1.58(B) at all, but instead, limited its analysis *337 to whether the General Assembly expressed an intent to apply the statute retroactively. The court determined that R.C. 2925.11(B)(2)(b) did not apply retroactively so as to preclude the prosecution of a defendant who committed the offense before the statute's enactment. The court stated: " '[t]he General Assembly's failure to clearly enunciate retroactivity ends the analysis, and the relevant statute may be applied only prospectively.' " Id. at ¶ 12, quoting State v. Consilio , 114 Ohio St.3d 295, 2007-Ohio-4163, 871 N.E.2d 1167, ¶ 10.
{¶ 46} In Vineyard , the court also did not consider R.C. 1.58(B). Instead, the court examined the plain language used in R.C. 2925.11(B)(2)(b). The court concluded that the defendant was entitled to R.C. 2925.11(B)(2)(b) immunity, even though the defendant overdosed, received emergency medical assistance, and subsequently completed drug addiction treatment before the effective date of the amendment. The court determined that "[t]he date of an overdose is not relevant in order for a person to seek treatment and comply with all the requirements of R.C. 2925.11(B)(2)(b). Rather, the question is: has the person seeking protection of R.C. 2925.11(B)(2)(b) been prosecuted, convicted, or penalized yet?" The court explained:
According to the plain language of [ R.C. 2925.11(B)(2)(b) ], "a qualified individual shall not be" charged, tried, or punished for petty drug offenses when certain requirements are met. There is nothing in the plain language of the statute that makes the prohibitions of being tried, convicted, or punished applicable only to those who overdosed after a specific date, nor does the plain language of the statute disqualify one who overdosed before the statute's effective date. Even if charged prior to the statute's enactment, the statute specifically dictates that trial courts shall not convict, or penalize one who overdoses if the treatment conditions have been met.
Id. at ¶ 12.
{¶ 47} The Vineyard court did not believe that applying the statute to the defendant's circumstances resulted in a retroactive application of the statute. Instead, the court concluded that the statute's plain terms applied to the defendant's situation. The court stated: "The statute, as written, instructs trial courts that a person who overdosed from drugs but sought medical treatment should not be prosecuted, convicted, or penalized if that person meets all the requirements set forth in the statute." Id. at ¶ 13. The court determined that the date of the overdose did not govern the statute's applicability, but rather, so long as the person had yet to be convicted or penalized, the statute would apply.
{¶ 48} Although neither Sieminski nor Vineyard addressed R.C. 1.58(B), the Vineyard decision appears congruent with the Ohio Supreme Court's decisions discussing R.C. 1.58(B)'s applicability to the General Assembly's sentencing overhaul.
{¶ 49} Consequently, we believe that R.C. 1.58(B) applies and allows appellant to seek the benefit of immunity offered under R.C. 2925.11(B)(2)(b). We therefore reverse the trial court's decision that R.C. 2925.11(B)(2)(b) cannot apply to appellant.
{¶ 50} To the extent appellant claims that the trial court erred by failing to conclude that he fulfilled the requirements set forth in R.C. 2925.11(B)(2)(b), this issue is not yet ripe for review. Instead, on remand the trial court may determine, in the first instance, whether appellant notified all of the statutory requirements for immunity to attach. We express no opinion regarding the factual merit of appellant's claim to immunity under R.C. 2925.11(B)(2)(b).
{¶ 51} Accordingly, based upon the foregoing reasons, we (1) sustain appellant's *338 first assignment of error to the extent he asserts that the trial court incorrectly interpreted R.C. 1.58(B) and 2925.11(B)(2)(b) ; and (2) overrule appellant's first assignment of error to the extent he contends that the trial court erred by failing to conclude that he satisfied the statutory requirements for immunity to attach.
II
{¶ 52} In his second assignment of error, appellant argues that his sentence is contrary to law. We believe, however, that our disposition of appellant's first assignment of error renders his second assignment of error moot. We therefore do not address it. See App.R. 12(A)(1)(c).
{¶ 53} Accordingly, based upon the foregoing reasons, we overrule appellant's second assignment of error and affirm the trial court's judgment.
JUDGMENT REVERSED AND CAUSE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.
Hoover, P.J. & McFarland, J.: Concur in Judgment & Opinion